NEWTON *et al. v.* CITY OF ATLANTA *et al.*

**442**

*G. S. Peck* and *J. LaValle Barwick,* for plaintiffs.

*J. C. Savage, C. S. Winn, J. C. Murphy,* and *Edwin L. Sterne,* for defendants.

Jenkins, Justice. Sixteen partnership and individual wholesale dealers in fruits and other produce in Atlanta, for themselves and others similarly situated, joined by nine others, filed a petition for injunction against the City of Atlanta and two of its officers, to enjoin enforcement of an annual occupation tax of $100, levied on "dealers in . . fruits and produce . . at wholesale." It was alleged that their business as wholesale dealers was conducted entirely in the Georgia State Farmers Market, created and operated by the State through the commissioner of agriculture under the act of February 25, 1935, providing for such markets; and consisted in the sale of perishable products from farms, orchards, and groves, which petitioners would buy from farmers and growers, and would sell at the market sometimes from stalls or stands and sometimes from the back end of trucks, in which they had brought the products to the market; that this market had been established and was conducted by the commissioner of agriculture, by virtue of the act, on property controlled by the State, and for the benefit of the farmers of the State in encouraging and promoting the sale of agricultural and orchard products; that pursuant to the act the commissioner had established rules and regulations

for operating the market, and the market was maintained as an agency or branch of the State performing governmental functions; that petitioners had subjected themselves to the provisions of the act and the rules and regulations of the commissioner, and were paying to the State through the commissioner sums of not less than fifty cents a day each as fees under the act for the permission or privilege of selling farm products on said market; that they and others of the same class were thus "a necessary part, adjunct, and parcel of said market, for without them and those similarly situated . . there would be no market and no need thereof;" that the defendants were without legal authority to impose or collect the tax on their occupation, which was levied only for revenue purposes, and not for license regulation; that the defendants not only had threatened petitioners with arrest, but had stated to them that fi. fas. would be issued, with a penalty thereon; that the intervention of equity was necessary to avoid a "multiplicity of . '. civil actions" as well as criminal prosecutions; and that the petitioners had no adequate and complete remedy at law against such acts and "levies upon their properties, destruction of their businesses, and continued oppression, resulting in their being forced to abandon their useful and lawful occupations." The levy and enforcement of the tax was attacked as ultra vires and void, on the ground that it was an infringement by the city on the governmental functions of an agency or branch of the State under the State market act of 1935 (supra). By amendment it was alleged that petitioners and others of the same class, doing business in said market, comprise over 99 per cent. of all wholesale dealers in fruit and produce in the City of Atlanta; that the imposition of this tax had caused the number of trucks coming to said market to sell their products in July, 1939, to fall off approximately 1400 trucks below the number in the preceding month, although the normal volume for each of those months in previous years was practically the same; and that the imposition of this tax will force out of business the petitioners and other dealers in this market, similarly situated, as well as tend to create a monopoly among the remaining one per cent. of large wholesale dealers located elsewhere. There were additional grounds of constitutional attack on the tax and ordinance, as violative of the due-process and equal-protection clauses of the 14th amendment to the constitution

of the United States and the State constitution (Code, §§ 1-815, 2-103), as levying an excessive, unreasonable, and confiscatory tax; and as making an unreasonable and arbitrary classification of the businesses of petitioners and others, in violation of art. 7, sec. 2, par. 1, of the State constitution (Code, § 2-5001).

The court dismissed the action on general demurrer on the grounds that the petition set forth no cause of action, that it contained no equity, and that each of the petitioners was subject to the tax.

■ While it is the general rule that equity will not enjoin a prosecution for a criminal offense, a recognized exception exists where the acts of a municipality threaten a business or other property right by the issuance and levy of an execution for an illegal license fee or tax, in which event "several taxpayers affected in a similar manner by . . [such] tax or license fee may join in a proceeding in equity to restrain [its] enforcement . . . and for such other relief as the nature of the case . . may require, provided it is common to all of them." *McIntyre* v. *Harrison,* 172 *Ga.* 65, 73, 74 (157 S. E. 499), and cit.; *Hornsby* v. *Bristow,* 185 *Ga.* 577, 580 (196 S. E. 25), and cit.; *Walker* v. *Carrollton,* 187 *Ga.* 237, 239 (200 S. E. 268); *Coker* v. *Atlanta,* 186 *Ga.* 473 (2), 475 (198 S. E. 74), and cit. This petition of twenty-five wholesale produce dealers, to enjoin the City of Atlanta from the issuance and levy of executions on their properties to enforce an alleged illegal occupation tax, alleging that the suit, brought for themselves and others in the same situation, "will avoid a multiplicity of . . civil actions," showed a threatened infringement of property rights, and was not subject to the general demurrer as involving merely threatened prosecutions for a criminal offense.

■ In *Roberts* v. *Barwick,* 187 *Ga.* 691 (3), 693, 697 (1 S. E. 2d, 713), this court in construing the act of February 25, 1935 (supra), providing for the creation and operation of State Farmers Markets, held that these activities of the commissioner of agriculture pursuant to the act were functions of the State.

■ "The general rule is that public property and the various instrumentalities of government are not subject to taxation. This immunity rests upon the most fundamental principles of government; being necessary in order that the functions of government be not unduly impeded," as well as for other reasons. The State's

properties and instrumentalities are thus exempt from municipal taxation or regulation, in the absence of express legislative authority. *Penick* v. *Foster,* 129 *Ga.* 217 (1, 3), 219, 221 (58 S. E. 773, 12 L. R. A. (N. S.) 1159, 12 Ann. Cas. 346), and cit.; *City Council of Augusta* v. *Dunbar,* 50 *Ga.* 387 (2) ; *City of Atlanta* v. *State,* 181 *Ga.* 346 (3), 348 (182 S. E. 184) ; *Walden* v. *Town of Whigham,* 120 *Ga.* 646, 647 (48 S. E. 159) ; *Dispensary Comm'rs* v. *Thornton,* 106 *Ga.* 106, 108 (31 S. E. 733) ; 43 C. J. 247. Instrumentalities and businesses have likewise been exempted from occupation taxes, even though privately owned and used for private gain, if they form an integral and essential part of governmental functions on government-owned or government-controlled property, and are conducted in accordance with the rules prescribed under governmental authority as authorized by statute. This is true for the reason that such taxation and acts of a subordinate political division "might be destructive of the means adopted by the government to carry out its purposes and obligations" (Territory of Alaska *v.* Annette Island Packing Co. (C. C. A.), 289 Fed. 671, 673), or "may interfere with, or impair . . efficiency in performing the functions . . designed to serve [the] government." Farmers &c. Sav. Bank *v.* Minnesota, 232 U. S. 516, 525 (34 Sup. Ct. 354, 58 L. ed. 706), and cit.; *Choclaw &c. R. Co.* v. *Harrison,* 235 U. S. 292, 298 (35 Sup. Ct. 27, 59 L. ed. 234) ; Western Union Tel. Co. *v.* Texas, 105 U. S. 460 (26 L. ed. 1067) ; 26 R. C. L. 96, 99, 105, 331, and cit.

Nothing to the contrary was held in *City of LaGrange* v. *Whitley,* 180 *Ga.* 805 (4), 812 (180 S. E. 823), where the party claiming exemption from a municipal tax was not in the exercise of a government function, but was a mere independent contractor engaged in paving under contracts with State governmental bodies; or in *Henry Grady Hotel Co.* v. *Atlanta,* 162 *Ga.* 818, 821, 825 (135 S. E. 68), where the lessee's interest under a lease of part of the Governor's mansion property was held subject to municipal taxation, and where such lease for a long term, and contemplating improvements and the payment of taxes by the lessee, was in effect a deed passing an estate in land; the lessee doing nothing on the premises which was in any way related to State functions. On the contrary, in the instant case, though the act of 1935 was intended to aid the Georgia farmer in facilitating the sale and exchange

of his products, "both wholesale and retail" (Code, § 5-211), and though nothing would be permitted which would impair that primary purpose, the act left all of the means and instrumentalities for its accomplishment to the sound discretion of the commissioner of agriculture, in authorizing him to operate as well as create these State Farmers Markets, to make rules and regulations governing their conduct, to collect charges for the use of a market, and to do other acts provided therein. Since a wide discretion was thus vested in the commissioner, and it has been the common practice in the conduct of public markets to permit middlemen to buy and sell therein, and even to occupy leased or licensed stalls or places under the control of the governing body and subject to its prescribed rules and regulations (see *Haywood* v. *Savannah*, 12 *Ga.* 404, 410-412; 43 C. J. 394-396; 38 C. J. 1258-1260), it can not be said that the legislature, by the mere use of the word "farmers" preceding the word "market," intended to limit to farmers the sale of farm products in the market, and to exclude other sellers therefrom, provided that their operations conserve the primary purpose of the act to aid Georgia farmers. Especially would this be true where, as here alleged, the operations of these wholesalers in buying fruits and produce from the farmers themselves, conveying them by trucks, and reselling them at this market, directly aided the farmers and constituted an essential part of the program of the commissioner in operating this market under the act of 1935. The petition alleged not only these facts and that the petitioners paid the fee of not less than fifty cents a day charged by the commissioner for the use of the market, and conformed to his rules and regulations, all of which would not have been required of such dealers elsewhere, but that the imposition of this license tax by the city on petitioners and others of the same class would impair and had already impaired the successful operation of this market.

The averments of the petition bringing the case within the preceding rules, it was for this reason error to dismiss the action on general demurrer. This ruling renders it unnecessary to deal with other grounds of constitutional attack on the ordinance imposing the tax. *Judgment reversed. All the Justices concur.*