No. 7.—GABRIEL HARRISON and RICHARD W. WRIGHT, administrators of EDMUND BUTTS, deceased, plaintiffs in error *vs.* JOEL WALKER, defendant in error.

"*Legis posteriores priores contrarias abrogant.*" When the provisions of a later statute are opposed to those of an earlier, the last mentioned must be considered as repealed.

When there are different statutes in *pari materia*, though made at different times, or even expired, and not referring to each other, they shall be taken and construed together as one system, and as explanatory of each other.

A statute repealing a former statute, being itself repealed, the first statute is revived.

The Act of June, 1806, providing that when any action shall be instituted within time and the plaintiff be nonsuited, or shall discontinue the same, after the time of limitation is expired, he shall be permitted to renew his action within six months thereafter, once only and not after, has been repealed.

This was a suit in equity brought in the Superior Court of the county of Putnam, for the purpose of recovering back usury from the defendant in error alleged to have been paid by complainants' intestate, while in life. The defendant answered the bill, and also pleaded specially the statute of limitations.

The case came up for trial in the court below at March Term, 1846, before Judge MERRIWETHER, and the bill, answer and plea having been read, the counsel for the complainants tendered in evidence the record of a former suit between the same parties, and for the same cause of action which had been commenced within time and afterwards dismissed, by which record it appeared that the present suit in equity was commenced within six months after the dismissal of the former suit.

The defendant's counsel objected to the evidence upon the ground that it did not tend to relieve the complainants from the bar of the statute of limitations:—Whereupon the judge of the court below sustained the objection, upon the ground that the act of June, 1806, under which the complainants relied, had been repealed,—and that the recommencement of a suit within six months from its dismissal, was not within the saving of the statute of limitations of force in this State. To which decision and judgment of the court below the complainants' counsel excepted, and assign for error.

1st. That the court erred in rejecting the record of the proceedings in a former suit between the same parties, in relation to the same cause of action on the grounds stated.

2d. The court erred in deciding that an act passed on the 26th of June, 1806, authorizing the commencement of one, within six months after the dismissal of a former action for the same cause, notwithstanding the statute of limitations might have run against said cause of action, was repealed, and that therefore complainants' right of action was barred by the statute of limitations.

F. H. CONE, for plaintiffs in error.

The only question on this Bill of Exceptions is whether the Act of Limitations, passed in June, 1806, is repealed by the Act of December, 1806.

Harrison et al. *vs*. Walker.

The Act of 1805 (*Clayton*, 269) repeals the Act of 1767, and is a general Statute of Limitations. The Act of June, 1806, (*Clayton*, 303,) authorizes writs to be commenced once, in six months after the nonsuit or discontinuance, and repeals that part of the 2d section of the Act of 1805 that prohibited it. It also repeals the 5th section of the Act of 1805, that repealed the Act of 1767. The Act of December, 1806, revives the Act of 1767, and repeals all Acts that militate against the intent and meaning of that Act, (*Clayton Dig*. 344.) The simple question, then, is, does the Act of June, 1806, militate against the Act of December, 1806 ? At common law, when a prior statute is repealed by a subsequent one, the repeal of the subsequent statute revives the first statute, (*Tucker's Com*., vol. 1, *p*. 16 ; 7 *Cowen*, 536.) If there are two affirmative statutes, (as in this case,) and they do not necessarily conflict, they must both stand, as repeals by implication are not favored, (2 *Washington's Rep*., 299 ; 9 *Cowen*, 437 ; 4 *Coke's Rep*., 63 ; *Dyer*, 343 ; 6 *Modern*, 287 ; 14 *Petersdorf*, 516.)

HARDEMAN for Defendant in Error.

*By the court*—NISBET, Judge.

To a bill brought by the plaintiffs in error, in Putnam Superior Court, the defendant, having answered, also plead the Statute of limitations ; to which plea the plaintiffs in error replied the commencement of a former suit, for the same cause of action, before the Statute Bar had attached, between the same parties, its dismissal, and the suing out of their present bill within six months from the dismissal of the first suit. The plaintiffs in error contended that the Act of June, 1806, which authorized a plaintiff having brought suit within time, which suit was nonsuited or discontinued, to sue again within six months from such discontinuance or nonsuit, and thus avoid the Statute Bar, was still unrepealed, and of force in Georgia. Whereas the defendant in error contended the Act of June, 1806, was repealed. The question was made in the court below, upon a demurrer to evidence, the judge then determining that the Act referred to was repealed. Upon that decision the error complained of is founded, and this court is now called upon to decide whether the Act of June, 1806, is still of force in Georgia. The Act of the Legislature passed in 1767 embraces the main body of our Law prescribing the different terms of limitation. It has been once repealed, and in some particulars modified, but is at this day of force in most of its provisions. It defines the terms of years which shall bar personal actions, and among these (an action on the case) is the action first instituted between the parties now before this court. The Act declares that this form of action shall be commenced within four years after the cause of action arises, and not after. It farther provides that in case of reversal, or arrest of judgment, rendered for the plaintiff—or in case of the defendant's outlawry, and reversal of such outlawry—the party plaintiff, his heirs, executors or administrators, as the case may require, may commence a new action, or suit, from time to time, within a year after such judgment reversed or arrested, or outlawry reversed. And these, so far as this action and all other personal actions are concerned, are the only exceptions to, or qualifications of, the limitations which the Act of 1767 enacts These provisions of that Act are necessary to be borne in mind in order to a fair understanding of this opinion. (*For the Act of* 1767 *see Prince*, 575.) The Act of 1767 was repealed by the 5th section of the Act of 1805, which latter Act made some alterations in the law of limitations. Reference to this last named Act is not important,

3

otherwise than in so far as it is part of the legislation of our State upon this subject, the history of which it is desirable here to trace. The 5th section of the Act of 1805, which repeals the Act of 1767, was itself repealed by the Act of June, 1806, which last repealing act revived, without limitation or restriction, the Act of 1767. Not only so, but in the Act of June, 1806, the Act of 1767 is declared to be in full force, as to " all actions, and causes of actions, which originated under it." A statute repealing a former statute being itself repealed, the first statute is revived. It is in this Act of June, 1806, that the provision is found under which the plaintiff, in the action below, sought to resist the statute of limitations. And it is, as to this Act, that the controversy arises. That provision is in the words following, to wit : " That when any action shall be instituted within the time limited in the said recited act, and the plaintiff be nonsuited, or shall discontinue the same after the time of limitation is expired, that he shall be permitted to renew his action within six months thereafter, for one time only, and not after ; and so much of the 2d section of said Act as is repugnant thereto be and the same is hereby repealed." This Act (June, 1806) does two things : first, it gives to plaintiffs the right, in case of discontinuance or nonsuit of actions instituted within the time limited by the Act of 1805, to renew their suits within six months after the discontinuance or nonsuit. And by this Act there is no doubt but that by such renewal the statute bar would be avoided. The other thing effected by it is a revival of the Act of 1767. Now, inasmuch as the Act of 1767 is revived by the Act of June, 1806, and made the law of the land ; and inasmuch as this Act of June, 1806, contains also a provision (the provision above recited) not found in, and (as is alleged) inconsistent with, the Act of 1767, therefore the new provision is claimed by counsel for the defendant in error to be a nullity, and of course not now of force. The court does not admit the conclusiveness of this reasoning; and did the legislation upon this subject stop here, it could not arrive at the conclusion upon this subject to which it has arrived. We do not believe that the provision recited is repugnant to the Act of 1767, which is revived ; it is only in addition to that Act. The Legislature must have intended to revive the Act of 1767, and, at the same time, give to plaintiffs a right which, under that Act, they did not possess. The revival of an Act, and a distinct enactment in relation to the subject matter of the revived Act, being found in the *same statute*, makes the construction less difficult. In the construction of a statute, it is the duty of the court, if possible, to give effect to each of its enactments. All the legal presumptions are against an intended conflict of provisions in the same Act. It would be a reflection upon the Legislature to suppose that they perversely intended a conflict, or were, from ignorance, incapable of preventing it. Thus, then, in December, 1806, the Act of 1767 stood revived, and with the additional enactment of June, 1806, was the law of the land. At this time the Legislature seems to have made a careful revision of the statutes of limitation, and, by the Act of 8th December, 1806, in express enacting words, declared the Act of 1767 to be revived, and in full force and operation, from the first day of February, 1793. That Act was already, as we have seen, in force, and why now, with such careful particularity, again revive it, it is difficult to see—unless the Legislature intended to set it up, independently of all adjuncts and accessory enactments, as the law of limitations.

Harison et al. vs. Walker.

The Act of December, 1806, is entitled an Act " to revise and continue in force" the Act of 1767.   It in so many words declares it to be " in full force and operation ;" and not stopping here, in a distinct enacting clause, declares that " all acts, or parts of acts, which militate against the intent and meaning of this Act, be and the same are hereby repealed."   The revival of the Act of '67, and the repeal of all acts militating against the intent and meaning of the Act of December, 1806, is not left to implication, or attained by the application of auxiliary canons of construction.   These things are expressly done.   This act farther does itself create some exceptions to the general operation of the limitations of the law of '67, among which are not to be found the exceptions created by the act of June, 1806.   Now we are constrained to assume that by the act of December, 1806, " the intent and meaning" of the legislature was, so far as personal actions are concerned, to make the Act of '67, and the exceptions contained in the Act of December, 1806, amendatory thereto, the law of the State, excluding all other provisions, laws and parts of laws, militating against that intent.   We must believe the legislature had under review all previous legislation upon this subject, and particularly the important provision of June, 1806.   If it was the intention of the legislature to retain that Act, they would have excepted it from the sweeping repealing clause of December, 1806.   This repealing clause is independent, and relates to all repugnant laws, and must be construed to abrogate every previous act, in conflict with the then meaning and intent of the legislature.   If we are right as to what was the intent and meaning of the legislature, then it only remains to inquire whether the Act of June, 1806, does, in fact, militate against that intent and meaning.   To test this, it seems to us sufficient to say, that by the Act of June, 1806, giving to plaintiffs the right to renew their suits within six months after the nonsuit or discontinuance of suits commenced within time, such plaintiffs are entitled to a privilege, which they cannot exercise under the Act of '67 and the Act of December, 1806.   If the law of June, 1806, is retained, then the law of limitations is essentially different in Georgia from the same law as fixed by the legislature in December, 1806.   It does not matter whether that difference is created by addition or alteration ; if there be a difference, it militates against the latest declared will of the legislature.   In the construction of all these acts, the court has applied the rule as laid down by Lord Mansfield in the case of *Rex* vs. *Foxdale et al.*, in 1 Burrows 447, to wit : " When there are different statutes ' *in pari materia*,' though made at different times, or even expired and not referring to each other, they shall be taken and construed together as one system, and explanatory of each other."   By this rule it has labored to harmonize the jarring mass of legislation upon this subject, and to retain the act of June, 1806, but has labored in vain ; for it does not hesitate to say that that act is necessary to justice, and peculiarly beneficial.   The court, not being at liberty to yield to arguments, " *ab inconvenienti*," it being its duty to declare, and not to give, the law, is compelled to yield to the rule, " *Leges posteriores priores contrarias abrogant*," and to hold the act of June, 1806, is repealed.

Judgment of the court below affirmed.